UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Marion Simuel

     v.                              Civil No. 21-cv-127-SE
                                        Opinion No. 2022 DNH 057
Warden, FCI Berlin


O R D E R

Marion Simuel, proceeding pro se, filed two petitions
seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241,
which have been consolidated into a single case.[1] Doc. no. 2 (21-
cv-127-SE) ("Petition 2") and Doc. no. 2 (21-cv-128-LM)
("Petition 1"). Petition 1 challenges disciplinary proceedings
arising from Incident Report No. 3358207, and Petition 2
challenges disciplinary proceedings arising from Incident Report
No. 3358208. Each of the challenged proceedings resulted in a
guilty finding and lost good-conduct time ("GCT"), as well as
other sanctions. Simuel alleges that the proceedings violated
his rights to procedural due process.

The warden moved for summary judgment on Petition 1. Doc.
no. 17. Simuel objected. Doc. no. 19. Before the court could
issue a ruling, the Bureau of Prisons ("BOP") expunged Incident
Report No. 3358207 and restored Simuel's lost GCT. Doc. nos. 20-
1, 20-2. The warden then filed a motion to dismiss Petition 1,

---

[1] Simuel v. Warden, FCI Berlin, 21-cv-128-LM, was
consolidated with this case on March 15, 2021. Doc. no. 6.

arguing Simuel's claims are moot. Doc. no. 20. Simuel again objected. Doc. nos. 22, 23.

The warden also filed a motion for summary judgment on Petition 2. Doc. no. 10. Simuel filed an objection and cross-motion for summary judgment in response.[2] Doc. no. 12.

## Background

The relevant disciplinary proceedings occurred while Simuel was incarcerated at the Federal Correctional Institution in Estill, South Carolina. He filed his § 2241 petitions after he was transferred to the FCI in Berlin, New Hampshire, where he remains incarcerated.

On January 28, 2020, a corrections officer drafted an incident report stating that she had seen Simuel earlier that morning in his cell with his genitals exposed and masturbating ("Original Report"). The officer reported that, at 2:42 a.m., she saw Simuel lying on his bed with his erect penis exposed through his boxers. She also reported that, at 3:41 a.m., she saw him lying on his bed, exposing himself, and looking directly at her while he masturbated. The Original Report charged Simuel

---

[2] In light of Simuel's pro se status and in the interests of judicial economy, the court waives the requirement that "[o]bjections to pending motions and affirmative motions for relief shall not be combined in one filing." LR 7.1(a)(1).

with two BOP Code violations: indecent exposure in violation of
BOP Code 300 for the incident at 2:42 a.m., and engaging in a
sexual act in violation of BOP Code 205 for the incident at 3:41
a.m.

Later that day, a lieutenant reviewed the officer's report.
Prison policy requires separate reports for separate incidents.
Consequently, the lieutenant suspended the Original Report and
instructed the officer to submit two separate reports describing
the incidents. Because the officer was attending training and
then was on leave, she did not complete the rewrite, Incident
Report ("I.R.") Nos. 3358207 and 3358208 ("Revised Reports"),
until February 4.

Notwithstanding the fact that the Original Report described
indecent exposure in violation of BOP Code 300 for the incident
at 2:42 a.m. and engaging in a sexual act in violation of BOP
Code 205 for the incident at 3:41 a.m., the Revised Reports used
identical descriptions of Simuel's behavior at 2:42 a.m. and
3:41 a.m. They stated that Simuel was lying on his bed, exposing
himself and vigorously masturbating while looking directly at
the reporting officer. They stated that the officer gave Simuel
a direct order to stop and that he did not. Both I.R. No.
3358207 (pertaining to 2:42 a.m.) and I.R. No. 3358208
(pertaining to 3:41 a.m.) charged Simuel with a BOP Code 205

violation for engaging in a sexual act. Simuel was given a copy
of the Revised Reports on February 4.[3]

Simuel had his Unit Discipline Committee ("UDC") review on
February 7. He raised that, per prison policy, he should have
received a copy of the Revised Reports within 24 hours after
staff became aware of his alleged misconduct. He also took issue
with the fact that he never received a copy of the Original
Report and requested a copy. Later that day, Simuel was notified
of his disciplinary hearings before a Disciplinary Hearing
Officer ("DHO") and was notified of his rights with respect to
those hearings. Simuel requested and was granted a staff
representative to act on his behalf.

Simuel had a disciplinary hearing on each Revised Report on
February 12. He indicated that he wanted to proceed with the
hearings despite the issues he raised with the UDC. The hearings
were held back-to-back, in front of the same DHO. At the start
of each hearing, Simuel asked, and was allowed, to change to a
different staff representative. According to the DHO's reports,
Simuel "mentioned" video footage, seemingly from the prison

---

[3] Simuel's objection and cross-motion for summary judgment
on Petition 2 states that he received a copy of I.R. No. 3358208
on February 7. Doc. no. 12 at 4. Attached to his Petition 2 is a
copy of I.R. No. 3358208, which states that it was delivered on
February 4. To the extent that Simuel disputes the date on which
he received I.R. No. 3358208, that dispute as articulated is not
material to the court's analysis.

security system, at both hearings. Doc. nos. 10-9 at 1, 17-7 at
1. Both reports state, "however, [Simuel] did not want to
postpone the hearing for [his] staff representative or DHO to
watch the video," and "[Simuel] indicated [he was] ready to
proceed." Doc. nos. 10-9 at 1, 17-7 at 1; see doc. nos. 10-9 at
3, 17-7 at 3 (both DHO reports also stating, "[Simuel] did make
mention of the video in the DHO hearing, but told the DHO [he]
did not want to postpone the hearing for [his] staff
representative or the DHO to watch the video."). He did not call
any witnesses at either hearing, but he made a brief statement
in his own defense at both hearings saying that he was not
guilty and that he had been asleep.

    Simuel also provided a written statement at both hearings,
arguing that the hearing was not in compliance with prison rules
because the Revised Reports were not delivered to him within 24
hours of the alleged misconduct and there was no good cause for
delivering them a week late. The written statement also argued
that he never received the Original Report, there may be
contradicting evidence or favorable statements in it that he did
not have the opportunity to view, and that he is entitled to
every document.

    At each hearing, the DHO asked Simuel why the delay in
receiving the operative incident report interfered with his
ability to defend himself. He was unable to provide a reason at

either hearing. Each time, the DHO advised him that although an incident report is ordinarily delivered within 24 hours per prison policy, that policy is a guideline. The DHO also explained that prisoners are not entitled to receive incident reports with errors in them, only the operative reports.

During his hearings, the DHO showed Simuel a copy of the Original Report. Simuel was allowed to view the Original Report but was denied his request to have a copy himself. The record does not reflect, and Simuel does not allege, that he asked for more time during the hearing so that he and his staff representative could review and consider the Original Report further, nor that he asked to postpone the hearing.

In each hearing, the DHO found Simuel guilty of a BOP Code 205 violation as charged in the relevant Revised Report. In each hearing, the DHO considered Simuel's statements and arguments but found the relevant Revised Report and Simuel's disciplinary history of BOP Code 205 violations to be more credible. Simuel lost 27 days of vested GCT and 60 days of nonvested GCT, along with other sanctions, for each guilty finding.[4] He was given a

---

[4] Each incident report also resulted in Simuel being sanctioned to 60 days of disciplinary segregation, a $30.00 fine, and a one-year loss of a certain privilege (phone privileges on I.R. No. 3358207 and commissary privileges on I.R. No. 3358208).

copy of both DHO reports on February 20, 2020. His appeals through the BOP's Administrative Remedy Procedure were denied.

In his § 2241 petitions and summary judgment briefing, Simuel essentially argues that his procedural due process rights were violated in three ways during the disciplinary proceedings. First, he argues that FCI Estill's violations of prison policy -- by failing to give him a copy of the Original Report and by failing to deliver the Revised Reports within 24 hours of staff becoming aware of his misconduct on January 28 -- violated his procedural due process rights. Second, he argues that the treatment of the Original Report violated his rights as set forth in Brady v. Maryland. See Brady v. Maryland, 373 U.S. 83, 87 (1963). Third, Simuel argues that the DHO had an obligation to review the video evidence to determine its relevance and that the failure to do so violated his procedural due process rights and his rights under Brady.[5]

I.   Petition 1 (I.R. No. 3358207)

The warden moved for summary judgment on Petition 1. Simuel objected. Before the court could issue a ruling, the warden

---

[5] Though Simuel repeatedly mentions Brady in relation to the video evidence, he alleges only that the DHO refused to review it. The DHO's refusal to consider the video evidence forms the basis of Simuel's third due process argument. In view of Simuel's pro se status, the court will assume without deciding that Simuel also intends to argue that he was deprived access to the video.

filed a motion to dismiss Petition 1. The motion and attached
declaration demonstrate that the BOP has expunged I.R. No.
3358207, restored Simuel's previously disallowed vested and
forfeited unvested GCT associated with that incident, and
recalculated his sentence computation.

A case is moot when the issues presented are no longer
"live" or the parties lack a legally cognizable interest in the
outcome. Pietrangelo v. Sununu, 15 F.4th 103, 105 (1st Cir.
2021) (quotation omitted). An issue of mootness may arise at any
point in the proceedings. See Boston Bit Labs, Inc. v. Baker, 11
F.4th 3, 8 (1st Cir. 2021). "[T]he key question is whether the
relief sought would, if granted, make a difference to the legal
interests of the parties." Id. (quotation omitted). When the
court can no longer give any "effectual relief" to the
potentially prevailing party, it must dismiss the case.
Pietrangelo, 15 F.4th at 105 (quotation omitted).

Though Simuel opposes the warden's motion to dismiss
Petition 1 for mootness, he does so only by arguing the merits
of his underlying due process claims. He does not address the
fact that the court can no longer provide him any effectual
relief on those claims. The record reflects that the BOP has
expunged I.R. No. 3358207 from Simuel's disciplinary record --
including all references to the guilty finding and the
associated sanctions. The BOP has restored the relevant vested

and nonvested GCT and recalculated Simuel's sentence
computation. These developments render Petition 1 moot. See
Yagman v. Thomas, 612 F. App'x 408, 409 (9th Cir. 2015) ("The
case became moot when the Bureau of Prisons vacated the
disciplinary proceedings, because there was no further relief
that could have been given to Yagman."); Pinson v. Berkebile,
604 F. App'x 649, 653 (10th Cir. 2015) (holding that
petitioner's § 2241 claims were moot because the BOP had
expunged the incident report and restored his GCT,
notwithstanding that he had already completed his loss-of-
privilege and disciplinary-segregation sanctions).[6]

Because there is no further relief the court can provide
Simuel on Petition 1, it is dismissed with prejudice.
Consequently, the warden's motion for summary judgment on
Petition 1 is denied as moot.

---

[6] That Simuel has already completed the periods of
disciplinary segregation and lost-phone privileges sanctioned on
I.R. No. 3358207 does not change the court's conclusion that
Petition 1 is moot. See doc. no. 2-2 (21-cv-128-LM) at 7-8
(DHO's report on I.R. No. 3358207, dated February 20, 2020,
imposing, inter alia, the sixty-day segregation sanction and
lost-phone-privilege sanction, the latter to be "[r]estore[d]"
on February 12, 2021). A ruling in Simuel's favor would not
redress those injuries, i.e., that time cannot be returned to
him. See, e.g., McRae v. von Blankensee, No. CV-20-00510-TUC-RM
(MSA), 2021 WL 2690127, at *3 (D.Ariz. May 12, 2021); see also
Pinson, 604 F. App'x at 653.

II.  <u>Petition 2 (I.R. No. 3358208)</u>

The warden moves for summary judgment on Petition 2. He argues that Simuel cannot claim that his due process rights were violated as alleged because Simuel was shown the Original Report during his disciplinary hearing and because Simuel declined the DHO's offer to postpone the hearing so that the DHO or Simuel's staff representative could review the video.

In Simuel's objection and cross-motion for summary judgment, he does not dispute that he was shown a copy of the Original Report during his hearing on I.R. No. 3358208 but contends that due process required that he receive his own copy of it. He reasserts his claims that failing to give him a copy of the Original Report and failing to deliver the Revised Reports within 24 hours of staff awareness of his alleged misconduct violated prison policies and, in turn, his procedural due process rights. Simuel also argues that the DHO was obligated to review the video footage to determine its relevance and suitability for the hearing.

A.  <u>Standard of Review</u>

The court treats cross-motions for summary judgment separately, drawing inferences in the nonmoving party's favor. AJC Intern., Inc. v. Triple-S Propiedad, 790 F.3d 1, 3 (1st Cir.

2015). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." Joseph v. Lincare, Inc., 989 F.3d 147, 157 (1st Cir. 2021) (quotation omitted). "Facts are material when they have the potential to affect the outcome of the suit under the applicable law." Id. (quotation omitted).

As to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party must point to definite and competent evidence showing the existence of a genuine issue of material fact. See Perez v. Lorraine Enters., 769 F.3d 23, 29–30 (1st Cir. 2014). Such evidence may include affidavits that are made on personal knowledge, "set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The non-moving party cannot rely "upon conclusory allegations, improbable inferences, and unsupported speculation." Benson v. Wal-Mart Stores East, L.P., 14 F.4th 13, 17 (1st Cir. 2021). If the nonmovant fails to adduce such evidence on which a reasonable factfinder could base a favorable

verdict, the motion must be granted. Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016).

### B.   Discussion

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The court assumes without deciding that prisoners retain a liberty interest in GCT and that 28 U.S.C. § 2241 remains a proper vehicle by which to challenge disciplinary proceedings resulting in the loss of GCT. See, e.g., Francis v. Maloney, 798 F.3d 33, 36-37 (1st Cir. 2015) (discussing how Pepper v. United States, 562 U.S. 476, 501 n.14 (2011) may call into question whether a prisoner can bring a habeas claim for relief associated with lost GCT because Pepper states in dicta that GCT "does not affect the length of a court-imposed sentence; rather, it is an administrative reward" to incentivize compliance with prison disciplinary regulations); cf. Wolff, 418 U.S. at 557 (concluding prisoners have a liberty interest in GCT because there is a statutory right to "a shortened prison sentence through the accumulation of credits for good behavior").

Proceeding under that assumption, if a prison disciplinary hearing may result in the loss of GCT, a prisoner is entitled

to: (1) written notice of the disciplinary charges at least 24
hours in advance of the hearing; (2) an opportunity, when
consistent with institutional safety and correctional goals, to
call witnesses and present documentary evidence in his defense;
(3) an impartial factfinder; and (4) a written statement by the
factfinder of the evidence relied upon and the reasons for the
disciplinary action. Id. at 563-67. Further, due process
requires that the disciplinary decision to revoke GCT be
supported by "some evidence." See Superintendent, Massachusetts
Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454, 455-56 (1985)
(explaining the "some-evidence" inquiry requires the court to
determine "whether there is any evidence in the record that
could support the [DHO's] conclusion").

> (1)  Violations of prison policy regarding report
>       delivery

Simuel asserts that, under FCI Estill's prison policy, he
was entitled to have I.R. No. 3358208 delivered to him within 24
hours of staff becoming aware of his alleged misconduct and he
was entitled to have a copy of the Original Report. FCI Estill's
failure to comply with these policies, Simuel argues, violated
his rights to procedural due process. It did not.

Even assuming the record could reasonably be construed to
show that FCI Estill violated prison policy as Simuel alleges,
he has failed to demonstrate that such policy violations equate

13

to violations of his rights to procedural due process. See, e.g., Wallace v. Fed. Detention Ctr., 528 F. App'x 160, 162-63 (3d Cir. 2013); Godlock v. Fatkin, 84 Fed. App'x. 24, 30, 30 n.7 (10th Cir. 2003). "To the extent that written directives were not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process." Ray v. Caraway, No. CIV.A. JFM-12-286, 2012 WL 3156832, at *6 (D.Md. Aug. 2, 2012); see also Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (explaining prison regulations are "primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates.").

It is undisputed that I.R. No. 3358208 was the operative report setting forth the charge that subjected Simuel to disciplinary action. It is also undisputed that Simuel received I.R. No. 3358208 more than 24 hours before his disciplinary hearing on February 12. The record demonstrates that Simuel was notified in writing of the disciplinary charge against him more than 24 hours in advance of his DHO hearing as required by Wolff. Therefore, the court concludes that, viewing the evidence in the light most favorable to each respective nonmoving party, the warden is entitled to summary judgment on this first set of claims and Simuel is not.

14

(2)  <u>Brady's application to the Original Report</u>

Simuel also contends that he had a due process right to receive a copy of the Original Report pursuant to <u>Brady v. Maryland</u>. In <u>Brady</u> and its progeny, the Supreme Court has held that the government violates a criminal defendant's right to due process by suppressing evidence favorable to the defendant that is material either to guilt or punishment. <u>See</u> <u>Brady</u>, 373 U.S. at 87. Neither the First Circuit nor the Supreme Court has held that <u>Brady</u> is applicable to prison disciplinary hearings.[7] It is unnecessary for the court to determine whether the protections provided by <u>Brady</u> apply here because the evidence cannot establish that Simuel was prejudiced by the fact that he did not see the Original Report until his DHO hearing or that he was denied his requests for his own copy.

To establish a <u>Brady</u> violation, a criminal defendant bears the burden of proving that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) prejudice ensued from the suppression (i.e., the suppressed evidence was material to guilt or punishment). <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004). Prejudice requires "a reasonable

---

[7] Only the Seventh Circuit has done so as of the date of this Order. See <u>Piggie v. Cotton</u>, 344 F.3d 674, 678 (7th Cir. 2003) (holding that "the rule of <u>Brady</u>, ... requiring the disclosure of material exculpatory evidence, applies to prison disciplinary proceedings").

probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985). The question is not directly whether the DHO would still have found that Simuel committed the offense as charged, but whether the suppression of the evidence undermines confidence in the outcome of the proceedings. See id. at 683; Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005).

Evidence is deemed "suppressed" if the prosecution failed to disclose it before it was too late for the defendant to make use of the evidence, and it was not otherwise available to the defendant through the exercise of reasonable diligence. 2 Fed. Prac. & Proc. Crim. § 256 (4th ed.). Simuel made several requests for the Original Report throughout his disciplinary proceedings, including at his DHO hearing on I.R. No. 3358208. The court assumes without deciding that the DHO's showing of the Original Report during Simuel's hearing constituted a late disclosure under Brady.

A late disclosure in and of itself does not win the day for a defendant alleging a Brady violation. See Dretke, 540 U.S. at 698. Because "suppression" under Brady hinges on the defendant's inability to use the evidence for his defense, a defendant cannot generally claim he was prejudiced by a late disclosure if he did not seek additional time to facilitate his use of that

evidence. Accordingly, "[t]he customary remedy for a Brady violation that surfaces mid-trial is a continuance and concomitant opportunity to analyze the new information and, if necessary, recall witnesses." United v. Mathur, 624 F.3d 498, 506 (1st Cir. 2010); see United States v. Collins, 415 F.3d 304, 311 (4th Cir. 2005) ("A motion to dismiss the charges is not the proper vehicle for redressing a late Brady disclosure; a request for a continuance is the best method of preventing harm to the defendant."); see also 2 Fed. Prac. & Proc. Crim. § 256 ("Disclosure during trial may not be too late for defendant to make use of the evidence, and defense counsel may request a continuance or recess to review the materials."). "Generally, [the First Circuit has] viewed the failure to ask for a continuance as an indication that [a defendant] was himself satisfied he had sufficient opportunity to use the evidence advantageously." Mathur, 624 F.3d at 506.

Here, Simuel has pointed to no facts in the record capable of demonstrating that, once he was shown a copy of the Original Report, he asked for more time to review it during his hearing or to postpone the hearing so that he could have an opportunity to utilize the information in the Original Report in his defense. Instead, Simuel fervently argues that his repeated

17

requests for his own copy of the Original Report were denied.[8]
Such arguments obscure the material, undisputed fact that he was
shown a copy of the Original Report during his hearing and did
not request more time to consider how to use it in his defense.
On this record, the court finds that Simuel cannot establish a
genuine dispute as to whether he was prejudiced by the timing of
his access to the Original Report or by the fact that he was
denied his own copy. That he made no attempt to utilize the
Original Report when the DHO made it available to him during his
hearing is fatal to his claim.

The court also finds that Simuel has failed to demonstrate
prejudice under Brady because the Original Report cannot
"reasonably be taken to put the whole case in such a different
light as to undermine confidence" in the outcome of the
disciplinary proceedings on I.R. No. 3358208.[9] See Banke, 540
U.S. 668 at 698; see also Bagley, 473 U.S. at 683; Conley, 415

_____

[8] Construing Simuel's pro se pleadings liberally and viewing
the evidence at summary judgment in the light most favorable to
him as a nonmoving party, the court does not understand Simuel's
insistence that he should have received his own copy of the
Original Report as an analog for a request for a continuance of
his DHO hearing or as an argument that the only way he could
have utilized the Original Report for his defense was to have
his own physical copy. Simuel has repeatedly argued that he is
simply entitled to his own copy of the Original Report because
it was relevant to his charges, and he requested it.

[9] The Original Report is part of the record in Simuel's
consolidated case. Doc. no. 10-4.

F.3d at 189 (explaining suppressed impeachment evidence is
immaterial under Brady if the evidence impeaches on a collateral
issue).

Simuel argues that I.R. No. 3358208 states the officer gave
him a direct order to stop masturbating while the Original
Report does not, and that there are notable differences between
the Original Report's and I.R. No. 3358207's characterization of
what occurred at 2:42 a.m. The DHO's report on I.R. No. 3358208
acknowledges the Original Report and the discrepancies Simuel
highlights. In deciding Simuel's guilt on I.R. No. 3358208,
pertaining to his conduct at 3:41 a.m., the DHO discussed the
credibility of the officer and of Simuel. Further, whether the
officer gave Simuel a direct order to stop masturbating is
irrelevant to the determination of guilt that the DHO needed to
make -- whether Simuel was engaging in a sexual act in violation
of BOP Code 205. Nor does it appear from the DHO's report that
the officer's direct order to stop as stated in I.R. No. 3358208
or her general credibility factored into the DHO's determination
of the sanctions to impose. Rather, her reasoning behind the
sanctions imposed was focused on Simuel's disciplinary history
of BOP Code 205 violations and the fact that sexual acts must be
deterred because they pose a serious threat to prison health,
safety, and welfare.

The court concludes that, viewing the evidence in the light most favorable to each respective nonmoving party, the warden is entitled to summary judgment on Simuel's <u>Brady</u> claim as to the Original Report and Simuel is not.

### (3) Claims pertaining to the video evidence

Simuel contends that the DHO suppressed and refused to watch the security video footage in violation of his rights to procedural due process and in violation of <u>Brady v. Maryland</u>. Courts have found that a prisoner's due process right to present documentary evidence in his own defense is violated when the disciplinary decisionmaker unjustifiably refuses to produce and review a potentially exculpatory security video upon the prisoner's request. <u>See, e.g.,</u> Howard v. U.S. Bureau of Prisons, 487 F.3d 808, 815 (10th Cir. 2007); Lennear v. Wilson, 937 F.3d 257, 262 (4th Cir. 2019) (holding the procedural due process right to present documentary evidence is applicable to a prisoner's request that prison officials produce and review a surveillance video in connection with his or her disciplinary proceedings). <u>See generally</u> Wolff, 418 U.S. at 566-67 (due process requires the prisoner have an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense).

Howard and Lennear may not be controlling, but the court
finds that the circumstances surrounding any request pertaining
to the video evidence are material to the court's analysis at
summary judgment. This is true as to both Simuel's procedural
due process claims and his Brady claims pertaining to the video
footage. Viewing the evidence in the light most favorable to
each respective nonmoving party, the competent evidence in the
current record reveals a genuine dispute on this matter that
precludes summary judgment.

The DHO's report on I.R. No. 3358208 states that Simuel
"did make mention of the video in the DHO hearing, but told the
DHO [he] did not want to postpone the hearing for [his] staff
representative or the DHO to watch the video." Doc. no. 10-9 at
3; see doc. no. 10-9 at 1. Her report also states that Simuel
"indicated [he was] ready to proceed." Doc. no. 10-9 at 1. Her
declaration in support of the warden's motion is consistent and
does not provide additional facts regarding the video footage or
any related discussions. See doc. no. 10-1, ¶ 12.

Both parties make arguments about the import of these
limited statements. Simuel's verified Petition 2 states, among
other things, that "the DHO suppressed the video evidence [he]
requested." Doc. no. 2 (21-cv-127-SE) at 3. The warden argues
that Simuel "declined the hearing officer's offer to review the
evidence that he wanted to present." Doc. no. 10 at 4. Neither

characterization is made manifest by the slim record. Neither party has provided competent evidence elaborating on what took place at the DHO hearing with respect to the video footage. See Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010) ("[M]ere allegations" of fact confined exclusively to a motion or pleading "are not entitled to weight in the summary judgment calculus."). See generally Whatley v. Streeval, No. 7:20-CV-00383, 2021 WL 4395807, at *5 (W.D.Va. Sept. 27, 2021) ("Other than his unsupported allegation to the contrary, Whatley has provided no evidence that he ever asked for review of the surveillance video. Because Whatley did not request that the DHO review the security video, the DHO was not required to review the video." (citation omitted)); Lennear, 937 F.3d. at 267, 275-76 (explaining the prisoner provided the court with a sworn affidavit detailing all the instances that he requested video evidence and was refused, and that the government had submitted no evidence to contradict the prisoner's affidavit); Burns v. PA Dep't of Corr., 642 F.3d 163, 173 (3d. Cir. 2011) (explaining the summary judgment record demonstrated "Burns requested that a video tape of the incident be presented as permitted under prison policy"). The current record does not compel the court to adopt either party's interpretation of what transpired between the DHO and Simuel, or more generally what occurred at the DHO hearing on I.R. No. 3358208, with respect to the video footage.

As such, the court finds that neither party is entitled to summary judgment on the current record with respect to Simuel's Petition 2 claims pertaining to the video evidence.

### Conclusion

For the foregoing reasons, the court concludes:

1. The warden's motion to dismiss Petition 1 for mootness (doc. no. 20) is granted;

2. Simuel's Petition 1 (doc. no. 2 (21-cv-128-LM)), pertaining to I.R. No. 3358207, is dismissed with prejudice;

3. The warden's motion for summary judgment on Petition 1 (doc. no. 17) is denied as moot;

4. Simuel's objection and cross-motion for summary judgment on Petition 2 (doc. no. 12) is denied; and

5. The warden's motion for summary judgment on Petition 2 (doc. no. 10) is granted in part and denied in part. The warden's motion is granted with respect to Simuel's claims pertaining to the Original and Revised Reports. The warden's motion is denied with respect to Simuel's claims pertaining to the video evidence.

Should either party intend to file further motions for summary judgment on Petition 2, the parties will need to supplement the record with competent evidence, not mere

argument,[10] that at least clarifies the sequence and content of any discussion about the video evidence at the DHO hearing on I.R. No. 3358208.[11] The court reiterates that Petition 1 has been dismissed in its entirety and Simuel's Petition 2 claims with respect to the Original and Revised Reports have been dismissed. Therefore, any further motions for summary judgment should focus only on the video evidence as it relates to Petition 2 -- I.R. No. 3358208.

     SO ORDERED.

                        _____
                        Samantha D. Elliott
                        United States District Judge

May 2, 2022

cc:  Marion Simuel, pro se.
      Counsel of Record.

---

    [10] The court twice provided Simuel with the court's Notice Regarding Summary Judgment, providing pro se parties with copies of the relevant federal and local rules. See doc. nos. 11, 18.

    [11] Any subsequent motion for summary judgment on behalf of the warden should include a copy of the video footage in question. If the warden cannot provide the video, he should explain why, as well as whether, given the placement and angle of any camera, any video would have been material to Simuel's guilt or punishment.